| | |
|---|---|
| John Nesse, et al., | Case No. 18-cv-0099 (WMW/TNL) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ENTRY OF DEFAULT JUDGMENT** |
| Hodges Cleaning Co., | |
| Defendant. | |

Plaintiffs move for entry of default judgment[1] against Defendant Hodges Cleaning Co. for liability under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* (Dkt. 9.) Plaintiffs seek $8,267.86 for unpaid contributions, double interest, and attorneys' fees and costs. For the reasons addressed below, the Court grants Plaintiffs' motion with respect to unpaid contributions and double interest, but the Court grants in part and denies in part the motion with respect to attorneys' fees and costs.

## BACKGROUND

Plaintiffs are multi-employer benefit plans (collectively, "the Funds") and the Funds' trustees. Created and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1974, codified as amended at 29 U.S.C. § 186(c)(5), the Funds are administered in accordance with ERISA. Hodges Cleaning agreed to be bound by the terms of a collective bargaining agreement (CBA) between a multi-employer

---

[1] Plaintiffs caption their motion as "Plaintiffs' Motion for Entry of Judgment." But Plaintiffs rely on Rule 55, Fed. R. Civ. P., which governs the procedure for seeking a default judgment.

bargaining committee of the Commercial Cleaning Contractors and the Laborers' District Council of Minnesota and North Dakota. The CBA covers the period from May 27, 2013, through April 30, 2016. Because the CBA automatically renewed for an additional twelve-month period, Hodges Cleaning was bound to the CBA through at least April 30, 2017.

The CBA required Hodges Cleaning to make monthly contributions to the Funds on behalf of its covered employees for their hours worked. The CBA also required Hodges Cleaning to set forth the amount due and owing for contributions on a remittance report form, to be submitted to the Funds with its monthly payment. The employer is "delinquent" under the CBA if its remittance report and payment are not postmarked on or before the fifteenth day of the month following the month for which the contributions are due. Additionally, the CBA gives the Funds' trustees, or their authorized agent, the right to inspect a complete set of all relevant payroll and employment records.

Hodges Cleaning voluntarily complied with a request from the Funds' authorized agent to produce a complete set of its payroll and employment records for the period of August 13, 2015, through December 31, 2016 (audit period). The Funds' authorized agent reviewed these records and determined that there were hours worked by Hodges Cleaning's employees covered by the CBA for which Hodges Cleaning did not submit contributions to the Funds. In total, the Funds' authorized agent determined that $2,915.90 is due and owing to the Funds for delinquent contributions during the audit period. Plaintiffs allege that Hodges Cleaning has failed to pay these delinquent contributions.

Plaintiffs commenced this ERISA action against Hodges Cleaning on January 15, 2018, seeking damages for unpaid contributions, double interest, and attorneys' fees and

costs.  Plaintiffs served the summons and complaint on Hodges Cleaning on February 20, 2018.  Hodges Cleaning then had 21 days to file an answer or otherwise respond to the complaint.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  That deadline passed without any response to the complaint.  Plaintiffs applied for an entry of default under Federal Rule of Civil Procedure 55(a), which the Clerk of Court entered on March 14, 2018.  Thereafter, Plaintiffs filed the pending motion for default judgment.

At a September 7, 2018 hearing on Plaintiffs' motion, the Court identified deficiencies in the record as to the damages sought by Plaintiffs and ordered Plaintiffs to supplement the record to cure these deficiencies.  Plaintiffs subsequently supplemented the record and, in doing so, amended the amount of attorneys' fees and costs that they seek.  The Court took the matter under advisement following a second hearing on November 7, 2018.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process.  First, the party seeking a default judgment must obtain an entry of default from the Clerk of Court.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Here, Plaintiffs sought an entry of default, and the Clerk of Court entered default against Hodges Cleaning on March 14, 2018.  The Clerk of Court's entry of default is supported by the record, which reflects that Hodges Cleaning was properly served and failed to answer or otherwise respond to the complaint.  The first step of the process has been completed.

Second, after default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). For this reason, the sole remaining issue before the Court is to determine the amount of damages. *See Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). A party entitled to a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). The district court may establish damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944).

Section 502(g)(2) of ERISA governs the calculation of damages for an employer that fails to fulfill its contribution obligations, providing that a court shall award:

(A)     the unpaid contributions,

(B)     interest on the unpaid contributions,

(C)     an amount equal to the greater of—

    (i)     interest on the unpaid contributions, or

    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . [of the unpaid contributions],

(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

> (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). "The legislative history of these provisions explains that Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts." *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988).

In support of their motion for default judgment, Plaintiffs submitted sworn testimony from the Funds' coordinator, Rodney Skoog, addressing the amounts due for delinquent contributions and double interest for the audit period. These amounts are derived from an audit invoice prepared by the Funds' authorized agent based on Hodges Cleaning's payroll and employment records. Plaintiffs also seek attorneys' fees and costs. At the September 7, 2018 hearing on the motion, the Court identified two deficiencies in the record as to the damages sought by Plaintiffs. First, the source of the wage and benefits rates used in the audit invoice to calculate unpaid contributions was unclear. Second, Plaintiffs had not provided sufficient documentation for this Court to determine the reasonableness of their attorneys' fees request. The Court ordered Plaintiffs to supplement the record to cure these deficiencies. Plaintiffs subsequently filed supplemental affidavits and exhibits and increased their request for attorneys' fees and costs from $2,040.93 to $3,987.82. The Court addresses, in turn, each aspect of the damages amount sought by Plaintiffs.

### 1. Unpaid Contributions

Plaintiffs seek $2,915.90 in unpaid contributions. The Skoog affidavit and accompanying audit invoice show hours that Hodges Cleaning reported in its payroll records for certain employees during the audit period. The affidavit compares those numbers to the corresponding hours that Hodges Cleaning reported to the Funds for contributions. The audit invoice demonstrates that, during the audit period, Hodges Cleaning failed to report a total of 178 hours. The audit invoice multiplies these unreported hours by the applicable rates of pay to reach a total unpaid contribution amount of $2,915.90. The Court has reviewed the audit invoice and the underlying records and identifies no substantial errors in the auditor's calculations.[2] Accordingly, Plaintiffs' motion for default judgment as to the unpaid contribution amount of $2,915.90 is granted.

### 2. Interest

ERISA requires that interest on unpaid contributions be determined using "the rate provided under the plan." 29 U.S.C. § 1132(g)(2). Article 14 of the CBA provides that Hodges Cleaning is "required to pay interest on all delinquent fringe benefit contributions at the rate prescribed by the Trustees in the Trust Agreements as may be amended from time to time."

---

[2] At the time of the September 7, 2018 hearing on Plaintiffs' motion, the pay-rate schedule in the record did not match the pay rates used by the auditor to calculate the total unpaid contribution amount. After the hearing, Plaintiffs supplemented the record with updated pay-rate schedules that are substantially consistent with the audit invoice. The only pay rates that remain inconsistent with the audit invoice—by approximately $1.10— pertain to 4 hours reported in September 2016. However, because Plaintiffs' audit invoice appears to *understate* the corresponding pay rates for September 2016, this minimal inconsistency results in no prejudice to Hodges Cleaning.

Plaintiffs assert, and Skoog attests in his affidavit, that the "Funds' Collection Policy" provides for an annual interest rate equal to the actuarial assumed rate of return for the Minnesota Laborers Pension fund, plus an additional .5 percent if the auditor determines a greater than 5 percent discrepancy in unpaid contributions over a 12-month period. Skoog attests that the current actuarial interest rate is 7.5 percent and that, based on the amount owed, the Funds are entitled to a .5 percent increase, for a total annual interest rate of 8 percent. Skoog calculated the total interest amount by multiplying the unpaid contributions by the 8 percent annual interest rate, compounded monthly, for the number of months delinquent. Based on this calculation, Skoog attests that Hodges Cleaning owes a total of $682.07 in interest on the unpaid contributions.

ERISA states that—in addition to interest on unpaid contributions—a plaintiff is entitled to the greater of either the liquidated damages amount provided for under the plan or the total accrued interest amount on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). This means that the plaintiffs are entitled to at least double interest. *See id.* The CBA in this case provides that, if Hodges Cleaning is delinquent in its contribution obligations, it is liable for a liquidated damages penalty that equals 10 percent of the unpaid contributions. As such, the liquidated damages amount is $291.59, which is 10 percent of the unpaid contribution amount of $2,915.90. As this amount is *less* than the accrued interest amount, Plaintiffs seek double interest in lieu of the liquidated damages amount, as permitted under ERISA. *See* 29 U.S.C. § 1132(g)(2)(C).

Because the interest amount is greater than the liquidated damages amount provided for under the CBA, Plaintiffs' motion for default judgment assessing double interest in the total amount of $1,364.14 is granted.

### 3. Reasonable Attorneys' Fees and Costs

Both ERISA and the CBA provide for the recovery of reasonable attorneys' fees and costs. Plaintiffs rely on the supplemental affidavit of their attorney to support their claim for $3,987.82 in attorneys' fees and costs.

A district court has substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1085 (8th Cir. 2000). The amount of reasonable attorneys' fees is determined by employing the lodestar method. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986); *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988); *see also Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Bhd. Labor Leasing*, 974 F. Supp. 751, 754 (E.D. Mo. 1997) (applying lodestar method in ERISA context), *aff'd*, 141 F.3d 1167 (8th Cir. 1998). The party seeking to recover attorneys' fees bears the burden of establishing that the requested fees are reasonable. *Hensley*, 461 U.S. at 433.

When calculating the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Id.*; *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). The hourly rate sought by an attorney must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11

(1984).  A district court may rely on its experience and knowledge of prevailing market rates to determine whether a claimed hourly rate is reasonable.  *Hanig*, 415 F.3d at 825.

Although Plaintiffs' supplemental attorney affidavit and supplemental memorandum of law state that the total amount of attorneys' fees and costs is $3,987.82, the attorney billing records Plaintiffs submitted reflect a "Grand Total" of $3,978.82. Moreover, when the line-item amounts in the billing records are added up, they equal an even lesser total of $3,708.82.  Despite the amount sought in Plaintiffs' memorandum of law, the billing records submitted to the Court establish, at most, attorneys' fees in a total amount of $3,170 and costs in a total amount of $538.82.

Notably, Plaintiffs sought only $1,488.75 in attorneys' fees at the time of the September 7 hearing.  Plaintiffs' attorneys' fees *more than doubled* in the two months between the September 7 hearing and the November 7 hearing.[3]  This significant increase, during a time period in which Plaintiffs' attorneys primarily were tasked with supplementing the record to correct deficiencies of their own making, warrants a more searching review of Plaintiffs' attorneys' fees request.  The Court analyzes the billing records for three distinct periods of time: (1) the period between the January 15, 2018 commencement of this lawsuit and the May 11, 2018 filing of the motion for default judgment and supporting documents; (2) the period between the filing of the motion for

---

[3]    Inexplicably, the amount of costs that Plaintiffs request *decreased* by $13.36 during that same time period, from $552.18 to $538.82.

default judgment and the September 7 hearing at which Plaintiffs were instructed to supplement the record; and (3) the period after the September 7 hearing.

### *January 15, 2018 through May 11, 2018*

The billing records reflect that, from the commencement of this action through the date on which Plaintiffs filed their motion for default judgment and supporting documents, Plaintiffs incurred $1,083.75 in attorneys' fees. These fees represent 0.75 hours billed at an hourly rate of $245 and 5 hours billed at an hourly rate of $180. The work performed during this period included corresponding with the Court and client representatives, drafting the application for entry of default and supporting affidavit, and drafting the motion for default judgment and supporting documents. The foregoing rates and hours billed between January 15, 2018, and May 11, 2018, are reasonable.

### *May 12, 2018 through September 7, 2018*

After Plaintiffs filed their motion for default judgment and supporting documents, the billing records reflect that Plaintiffs incurred an additional $871.25 in attorneys' fees through the date of the September 7 hearing. These fees represent 0.25 hours billed at an hourly rate of $245 and 4.5 hours billed at an hourly rate of $180. The work performed during this period included corresponding with the Court regarding scheduling, serving or attempting to serve documents on Hodges Cleaning, and preparing for and attending the September 7 hearing.

Some of the foregoing rates and hours billed are reasonable. But this period includes nine separate billing entries, for a total of 2.25 hours of attorney time equating to $421.25 in fees, that counsel primarily spent corresponding with process servers and the Court about

service of process and scheduling.[4]  There is no explanation as to why Plaintiffs' counsel expended such a significant amount of attorney time, at an attorney billing rate, performing what appear to be basic administrative responsibilities.  Because it is unreasonable for Plaintiffs to seek $421.25 in attorneys' fees for such administrative tasks, the Court deducts this portion of the requested attorneys' fees.

### September 8, 2018 through Present

The billing records reflect that, in the seven weeks after the September 7 hearing, Plaintiffs incurred an additional $1,215 in attorneys' fees.  These fees represent 6.75 hours billed at an hourly rate of $180.  The work performed during this period included corresponding with the Court and client representatives, drafting the supplemental Skoog and attorney affidavits, preparing supplemental exhibits, and drafting a supplemental memorandum of law.  Although some of the foregoing rates and hours billed are reasonable, others are not.

The nature of the work performed for each particular billing entry is not always clear.  But Plaintiffs' counsel spent *at least* 3 hours—equating to at least $540 in fees—on work reflected in nine billing entries[5] that involved obtaining a 2-page updated rate sheet, preparing an 8-sentence supplemental Skoog affidavit, preparing a 3-page supplemental attorney affidavit that is nearly identical to the initial attorney affidavit, and preparing a

---

[4]      These nine billing entries are dated May 14, 22, and 30; June 6, 11, and 22; and August 18, 20, and 24.
[5]      These nine billing entries are dated September 11 and 30 and October 10-12, 16, 19, 21, and 23.

10-page supplemental memorandum of law that is nearly identical to Plaintiffs' initial memorandum of law in support of their motion for default judgment.[6] This work was, in large part, necessitated by Plaintiffs' failure to provide the correct information in the first instance. There is no explanation for why the correct supporting documentation was unavailable to Plaintiffs' counsel when the motion for default judgment was filed in May 2018. Nor is there any explanation for why it took Plaintiffs' counsel nearly the same amount of time to *supplement* the record as it initially took to prepare Plaintiffs' deficient motion and supporting documentation. The attorneys' fees amount attributable to these nine billing entries is unreasonably excessive and, to some extent, duplicative of work that Plaintiffs' counsel previously performed. For these reasons, the Court deducts this $540 portion of the requested attorneys' fees.

Several other billing entries during this period appear to relate to Plaintiffs' counsel's attempts to meet and confer with the owner of Hodges Cleaning. The owner of Hodges Cleaning attended the September 7 hearing, but he was not permitted to participate because Hodges Cleaning is not represented by counsel. In light of the owner's attendance at the September 7 hearing, the Court directed Plaintiffs to meet and confer with Hodges Cleaning regarding a possible resolution of this case, update the Court by letter as to the status of the case no later than September 21, and promptly contact the Court to obtain a new hearing date if the case had not been resolved by that date. Plaintiffs' counsel failed to comply with that order and did not file a status update letter until October 2, after being

---

[6]     The Court did not request a supplemental memorandum of law.

prompted by the Court. Four billing entries[7] reflect that, after the Court's September 21 deadline had passed, Plaintiffs' counsel spent at least 1 hour, at an hourly rate of $180, performing follow-up tasks pertaining to the meet-and-confer with Hodges Cleaning and preparing an untimely status letter to the Court. Because the attorneys' fees amount attributable to these four billing entries is unreasonable, the Court also deducts this $180 portion of the requested attorneys' fees.

In addition, this period includes three separate billing entries, for a total of 0.75 hours of attorney time equating to $135 in fees, that counsel primarily spent corresponding with the Court regarding scheduling.[8] As addressed above, it is unreasonable for Plaintiffs to seek $135 in attorneys' fees for such administrative tasks. Accordingly, the Court also deducts this portion of the requested attorneys' fees.

In summary, the Court finds that the requested attorneys' fees amount is unreasonably excessive. The Court deducts $1,276.25 from the $3,170 in attorneys' fees reflected in the billing records, which results in a total reasonable attorneys' fees amount of $1,893.75 that is established on this record. Plaintiffs also seek $538.82 in costs for service and courier fees, postage, and parking, which the Court finds to be reasonable and supported by the record.

---

[7]      These four billing entries are dated September 23, 24, and 27 and October 2.

[8]      These three billing entries are dated September 19, October 5, and October 9.

Accordingly, Plaintiffs' motion for default judgment in the amount of $3,987.82 in attorneys' fees and costs is granted for a reduced amount of $2,432.57 and is otherwise denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Plaintiffs' motion for entry of default judgment, (Dkt. 9), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

2.      The Clerk of Court shall enter judgment in the amount of $6,712.61 against Defendant Hodges Cleaning Co. and in favor of Plaintiffs.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  December 21, 2018                                    s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge